1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    CHARLES TRAYZON GILBERT,                      No.  2:22-cv-2160 DB P

12                     Plaintiff,

13           v.                                     ORDER

14    W. PEREZ, et al.,

15                     Defendants.

16

17          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42

18   U.S.C. § 1983.  Plaintiff claims that he was falsely found guilty of a rules violation in retaliation

19   for exercising his first amendment rights.  Presently before the court is plaintiff's motion to

20   proceed in forma pauperis (ECF No. 3) and his complaint for screening (ECF No. 1).  For the

21   reasons set forth below, the undersigned will grant the motion to proceed in forma pauperis and

22   dismiss the complaint with leave to amend.

23                                     **IN FORMA PAUPERIS**

24          Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. §

25   1915(a).  (ECF No. 3.)  Accordingly, the request to proceed in forma pauperis will be granted.

26          Plaintiff is required to pay the statutory filing fee of $350.00 for this action.  28 U.S.C. §§

27   1914(a), 1915(b)(1).  By this order, plaintiff will be assessed an initial partial filing fee in

28   accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court will direct

the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the court.  Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C. § 1915(b)(2).

## SCREENING

### I.     Legal Standards

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity.  See 28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1) & (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke, 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis.  See Franklin, 745 F.2d at 1227. Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell AtlanticCorp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

However, in order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atlantic,

1  550 U.S. at 555.  In reviewing a complaint under this standard, the court must accept as true the

2  allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S.

3  738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all

4  doubts in the plaintiff's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

5          The Civil Rights Act under which this action was filed provides as follows:

6              Every person who, under color of [state law] . . . subjects, or causes
               to be subjected, any citizen of the United States . . . to the deprivation
7              of any rights, privileges, or immunities secured by the Constitution .
               . . shall be liable to the party injured in an action at law, suit in equity,
8              or other proper proceeding for redress.

9  42 U.S.C. § 1983.  Here, the defendants must act under color of federal law.  Bivens, 403 U.S. at

10  389.  The statute requires that there be an actual connection or link between the

11  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

12  Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

13  (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

14  meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or

15  omits to perform an act which he is legally required to do that causes the deprivation of which

16  complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

17          Moreover, supervisory personnel are generally not liable under § 1983 for the actions of

18  their employees under a theory of respondeat superior and, therefore, when a named defendant

19  holds a supervisorial position, the causal link between him and the claimed constitutional

20  violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979);

21  Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations

22  concerning the involvement of official personnel in civil rights violations are not sufficient.  See

23  Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

24      **II.      Allegations in the Complaint**

25          Plaintiff states the events giving rise to the allegation in the complaint occurred while he

26  was a California Department of Corrections and Rehabilitation ("CDCR") inmate housed at Mule

27  Creek State Prison ("MCSP").  (ECF No. 1 at 1.)  He has identified the following individuals as

28  defendants: (1) Registered Nurse W. Perez; (2) correctional officer B. Mohr; (3) correctional

3

1  lieutenant J. Quiring; (4) correctional officer Lamas; (5) correctional officer Parks; and (6) the

2  CDCR.  (Id. at 1-3.)

3      Plaintiff alleges on April 28, 2022, "Defendant W. Perez, a Phillipino woman, acted on a

4  harbored discriminatory animus toward Plaintiff, an Afro-American inmate/patient class member

5  of Coleman v. Newsom."[1]  (Id. at 5.)  He further states "Perez maliciously and capriciously

6  falsely accused plaintiff of masturbating through his jeans during group therapy and in the

7  presence of other inmate/patients and herself."  (Id.)  He further alleges that Perez's actions "were

8  motivated by Plaintiff's race, mental diagnosis (exhibitionistic disorder) and status as an

9  incarcerated person."  (Id.)

10      On May 3, 202[2],[2] defendant Mohr told plaintiff that a Rules Violation Report ("RVR")

11  had been issued charging plaintiff with "sexual disorderly conduct."  (Id. at 6.)  Plaintiff was

12  given a copy and informed that Mohr was assigned as plaintiff's staff assistant.  Before the

13  hearing, plaintiff learned the names of the inmate who were sitting close to plaintiff at the time of

14  the alleged incident.  (Id.)  Plaintiff relayed the information to Mohr along with his request that

15  the reporting employee, Perez, be present at the RVR hearing.  Plaintiff alleges Mohr "refused to

16  assist" him in the preparation of his defense "by refusing to accept the names of [his] witnesses."

17      The RVR hearing was held on May 25, 2022.  (Id. at 7.)  Plaintiff's staff assistant, Mohr,

18  and the senior hearing officer ("SHO"), Quiring, were present for the hearing.  As plaintiff

19  entered the room, Quiring stated, "Here's our 602er."  Plaintiff describes the statement as "[a]n

20  inappropriate reference to [his] previous enjoyment of First Amendment protected conduct."  (Id.)

21      Plaintiff alleges Mohr failed to locate potential witnesses even though plaintiff gave her

22  their names.  Plaintiff further states that he could not locate the witnesses himself because at the

23  ////

24  _____

25  [1] The Coleman class includes "all inmates with serious mental disorders who are now, or who will in the future be confined within the California Department of Corrections."  Coleman v.

26  Schwarzenegger, 922 F. Supp. 2d 882, 899 n.11 (E.D. Cal. 2009) (citation and internal quotation marks omitted).

27  [2] The complaint states that plaintiff received a copy of the RVR on May 3, 2020.  (ECF No. 1 at

28  6.)  However, this appears to be an error in light of the other dates contained in the complaint.

1  time this occurred, "the facility was not open for program, meaning the yard was closed and there

2  was no inmate movement, aside from priority ducats, work, school, appointments, etc." (Id.)

3      Plaintiff states Quiring "refused to accept [his] written questions to be asked of the inmate

4  witnesses" and Quiring would not call plaintiff's requested witnesses. (Id. at 8.)  Plaintiff alleges

5  Mohr failed to ensure the reporting employee, Perez, was available either in person or by phone,

6  during the hearing.  Plaintiff further claims that, Quiring refused to ensure the availability of

7  Perez at the hearing in spite of plaintiff's requests and falsified the disciplinary hearing results to

8  reflect that Perez was made available by phone.  Finally, plaintiff alleges that Quiring ignored

9  plaintiff's written plea of "not guilty" submitted at the beginning of the hearing, and entered a

10  false guilty plea on plaintiff's behalf.

11      Plaintiff states Mohr and Quiring "colluded in the blocking of [his] efforts at presenting

12  documentary evidence in support of plaintiff's defense against the false charge in the RVR,

13  throughout the entire disciplinary process, specifically by maliciously and capriciously refusing to

14  produce the video surveillance footage of the location where the alleged incident supposedly

15  occurred, as well as the video surveillance footage of the yard which would have also proven that

16  plaintiff was actually on the yard at the time of the alleged incident was said to have occurred."

17  (Id. at 8-9.)

18      At the conclusion of the hearing, Quiring found plaintiff guilty.  (Id. at 9.)  Plaintiff was

19  assessed 180 days loss of certain privileges, 60 days loss of good time credits, increased his

20  custody level, removed him from his vocational assignment, and diminished his parole prospects.

21  After the hearing, Mohr falsely stated that she gave plaintiff a copy of the completed RVR.  (Id. at

22  10.)

23      Plaintiff states on August 20, 2021, defendants Lamas and Parks "concerted with

24  defendants Perez, Mohr, and Quiring in deterring plaintiff from filing grievances when they

25  entered Plaintiff's cell under the guise of a 'cell search.'"  (Id. at 10.)  Lamas and Parks proceeded

26  to discard several of plaintiff's canteen items, dumped plaintiff's property out of his locker,

27  mixed up plaintiff's belonging with his cellmate's, and left plaintiff's supply of 602 appeal forms

28  "torn to pieces atop [his] bunk."  (Id. at 11.)  He further alleges that Lamas and Parks "falsified a

5

MCSP-0310 'standard cell search' form, alleging that they confiscated 'two jugs of fermented fruit.'"  Plaintiff alleges that there was no fermented fruit as evidenced by the fact that he was not issued a RVR for inmate manufactured alcohol.  Rather, plaintiff claims the search was intended to deter plaintiff from filing grievances.

### III.   Does Plaintiff State a Claim under § 1983?

#### A.  False RVR

The filing of a false RVR by a prison official against a prisoner is not a per se violation of the prisoner's constitutional rights.  See Muhammad v. Rubia, No. C08-3209 JSW PR, 2010 WL 1260425, at *3 (N.D. Cal. Mar. 29, 2010), aff'd 453 Fed. Appx. 751 (9th Cir. 2011) ("[A] prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. As long as a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a claim under § 1983.") (internal citation omitted); Harper v. Costa, No. CIVS07-2149 LKK DAD P, 2009 WL 1684599, at *2-3 (E.D. Cal. June 16, 2009), aff'd 393 Fed. Appx. 488 (9th Cir. 2010) ("Although the Ninth Circuit has not directly addressed this issue in a published opinion, district courts throughout California . . . have determined that a prisoner's allegation that prison officials issued a false disciplinary charge against him fails to state a cognizable claim for relief under § 1983.").

There are, however, two ways that an inmate who has been subjected to a false disciplinary report can state a cognizable civil rights claim: (1) when the prisoner alleges that the false disciplinary report was filed in retaliation for his exercise of a constitutional right and (2) when the prisoner alleges that she was not afforded procedural due process in a proceeding concerning a false report.  See Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997) ("[T]his court has reaffirmed that prisoners may still base retaliation claims on harms that would not raise due process concerns."); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) (holding that the filing of a false disciplinary charge against a prisoner is not actionable under § 1983 if prison officials provide the prisoner with procedural due process protections); Hanrahan v. Lane, 747 F.2d 1137, 1141 (7th Cir. 1984) ("[A]n allegation that a prison guard planted false evidence which implicates

an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural protections . . . are provided."); see also Ellis v. Foulk, No. 14-cv-0802 AC P, 2014 WL 4676530, at *3 (E.D. Cal. Sept. 18, 2014) ("Plaintiff's protection from the arbitrary action of prison officials lies in 'the procedural due process requirement[] . . . .'") (quoting Hanrahan, 747 F.2d at 1140).

Prisoners have a First amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)).  Filing prison grievances is a constitutionally protected activity, and it is impermissible for prison officials to retaliate against prisoners for engaging in those activities.  Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005).

As set forth below, plaintiff may be able to show a violation of his rights based on the false RVR, but should include additional facts in order to state potentially cognizable claims.

### B. Retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote and citations omitted).

Plaintiff has alleged that he was subject to a false RVR and retaliatory search because he filed grievances.  However, he has not alleged facts indicating when or what grievances he filed.  Thus, the undersigned finds that allegations too conclusory to state a cognizable claim.  See Ortiz v. Lewis, No. 12-cv-02602 JD, 2014 WL 6788091 at *3 (N.D. Cal. Dec. 2, 2014) (finding allegations of retaliation too conclusory to state a claim because plaintiff had not identified what grievances he filed or describe how the adverse action was taken because of his protected conduct).  Additionally, he has not alleged facts that would show all the defendants who took adverse action against him did so because he had filed grievances.  In any amended complaint,

7

1    plaintiff must state facts indicating that defendants taking adverse action were aware he filed

2    grievances and that the adverse action taken was based on plaintiff's use of the administrative

3    grievance system.

4        **C. Equal Protection**

5        The Equal Protection Clause requires that persons who are similarly situated be treated

6    alike.  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); Hartmann v. Calif.

7    Dept. of Corrs. and Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705 F.3d

8    1021, 1030 (9th Cir. 2013); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008).  State prison

9    inmates retain a right to equal protection of the laws guaranteed by the Fourteenth Amendment.

10   Walker v. Gomez, 370 F.3d 969, 974 (9th Cir. 2004) (citing Lee v. Washington, 390 U.S. 333,

11   334 (1968)).  An equal protection claim may be established by showing that defendants

12   intentionally discriminated against plaintiff based on his membership in a protected class,

13   Hartmann, 707 F.3d at 1123, or that similarly situated individuals were intentionally treated

14   differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Dept.

15   of Agriculture, 553 U.S. 591, 601-02 (2008).  Neither mental illness nor incarceration are suspect

16   classes for Equal Protection purposes.  Heller v. Doe by Doe, 509 U.S. 312, 321 (1993); Glauner

17   v. Miller, 184 F.3d 1053, 1054 (9th Cir. 1999).

18       Plaintiff has alleged that defendant Perez, falsely accused plaintiff of conduct for which he

19   received a RVR and that her "false actions were motivated by Plaintiff's race, mental diagnosis

20   (exhibitionistic disorder)[,] and status as an incarcerated person."  (ECF No. 1 at 5.)

21       "Intentional discrimination means that a defendant acted at least in part *because of* a

22   plaintiff's protected status."  Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir. 1994)

23   (emphasis in original) (citing Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256,

24   279 (1979)).  Plaintiff has alleged, that Perez falsely accused plaintiff of inappropriate conduct

25   because of his race, mental diagnosis, and status as an inmate.  However, the complaint does not

26   contain any facts from which the court could infer discriminatory intent, such as the use of

27   discriminatory language.  Thus, the complaint fails to allege sufficient facts to state a cognizable

28   Equal Protection claim.  In any amended complaint, plaintiff should allege facts showing that

8

Perez's actions were motivated by some animus toward plaintiff, because of his membership in a protected class.

### D.  Due Process

Prisoners retain their right to due process subject to the restrictions imposed by the nature of the penal system.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  Prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply.  See id.  But the Due Process Clause requires certain minimum procedural protections where serious rules violations are alleged, the power of prison officials to impose sanctions is narrowly restricted by state statute or regulations, and the sanctions result in a deprivation of "real substance."  See id. at 556-57, 571-72 n.19; Sandin v. Conner, 515 U.S. 472, 484 (1995).  "Real substance" is limited to freedom from (1) a restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or (2) state action that "will inevitably affect the duration of [a] sentence." Sandin, 515 U.S. at 484, 487.

Wolff established five constitutionally mandated procedural requirements for disciplinary proceedings. First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charge and to enable him to marshal the facts and prepare a defense." Id. at 564.  Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." Id. Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)).  Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566.  And fifth, "[w]here an illiterate inmate is involved [or] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . . from the staff or from a[n] . . . inmate designated by the staff." Id. at 570.

1    Additionally, "some evidence" must support the decision of the hearing officer.

2    Superintendent v. Hill, 472 U.S. 445, 455 (1985).  The standard is not particularly stringent and

3    the relevant inquiry is whether "there is any evidence in the record that could support the

4    conclusion reached."  Id. at 455-56.

5    The allegations in the complaint are not sufficiently detailed for the undersigned to

6    determine whether they make out a potentially cognizable due process claim.  Plaintiff has

7    alleged that defendants failed to call his requested witnesses and did not ensure that the reporting

8    employee appeared at the hearing.  However, Wolff does not require that all of plaintiff's

9    requested witnesses testify during a disciplinary hearing.  See Baxter v. Palmigiano, 425 U.S.

10   308, 321 (1976) (The right to call witnesses is subject to the "mutual accommodation between

11   institutional needs and objectives and the provisions of the Constitution.").  In any amended

12   complaint, plaintiff should include facts indicating what reason, if any, was given to him

13   regarding the witnesses and reporting employee's absence.

14                    **E.  CDCR as a Defendant**

15   Plaintiff states that the defendants named in this action are employees of the CDCR, and

16   "thus CDCR is liable for the unconstitutional acts and omissions of said defendants."  (ECF No. 1

17   at 12.)

18   The Eleventh Amendment erects a general bar against federal lawsuits brought against the

19   state.  Wolfson v. Brammer, 616 F.3d 1045, 1065-66 (9th Cir. 2010) (citation and quotation

20   marks omitted).  While "[t]he Eleventh Amendment does not bar suits against a state officials for

21   prospective relief," Wolfson, 616 F.3d at 1066, suits against the state or its agencies are barred

22   absolutely, regardless of the form of relief sought.  See Pennhurst State School & Hospital v.

23   Halderman, 465 U.S. 89, 100 (1984); Buckwalter v. Nevada Bd. Of Medical Examiners, 678 F.3d

24   737, 740 n.1 (9th Cir. 2012).

25   The CDCR, as a state agency is entitled to Eleventh Amendment immunity regardless of

26   the relief sought by plaintiff.  If plaintiff chooses to file an amended complaint, he is advised to

27   carefully consider whom he may properly name as a defendant in this action.

28   ////

                                        10

**AMENDING THE COMPLAINT**

As set forth above, the complaint does not contain sufficient facts to state any potentially cognizable claims.  However, plaintiff will be given the opportunity to file an amended complaint.  Plaintiff is advised that in an amended complaint he must clearly identify each defendant and the action that defendant took that violated his constitutional rights.  The court is not required to review exhibits to determine what plaintiff's charging allegations are as to each named defendant.  The charging allegations must be set forth in the amended complaint, so defendants have fair notice of the claims plaintiff is presenting.  That said, plaintiff need not provide every detailed fact in support of his claims.  Rather, plaintiff should provide a short, plain statement of each claim.  <u>See</u> Fed. R. Civ. P. 8(a).

Any amended complaint must show the federal court has jurisdiction, the action is brought in the right place, and plaintiff is entitled to relief if plaintiff's allegations are true.  It must contain a request for particular relief.  Plaintiff must identify as a defendant only persons who personally participated in a substantial way in depriving plaintiff of a federal constitutional right.  <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation of a constitutional right if he does an act, participates in another's act or omits to perform an act he is legally required to do that causes the alleged deprivation).

In an amended complaint, the allegations must be set forth in numbered paragraphs.  Fed. R. Civ. P. 10(b).  Plaintiff may join multiple claims if they are all against a single defendant.  Fed. R. Civ. P. 18(a).  If plaintiff has more than one claim based upon separate transactions or occurrences, the claims must be set forth in separate paragraphs.  Fed. R. Civ. P. 10(b).

The federal rules contemplate brevity.  <u>See</u> <u>Galbraith v. County of Santa Clara</u>, 307 F.3d 1119, 1125 (9th Cir. 2002) (noting that "nearly all of the circuits have now disapproved any heightened pleading standard in cases other than those governed by Rule 9(b)"); Fed. R. Civ. P. 84; <u>cf.</u> Rule 9(b) (setting forth rare exceptions to simplified pleading).  Plaintiff's claims must be set forth in short and plain terms, simply, concisely and directly.  <u>See</u> <u>Swierkiewicz v. Sorema</u> <u>N.A.</u>, 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8.

11

1    An amended complaint must be complete in itself without reference to any prior pleading.

2  E.D. Cal. R. 220.  Once plaintiff files an amended complaint, all prior pleadings are superseded.

3  Any amended complaint should contain all of the allegations related to his claim in this action.  If

4  plaintiff wishes to pursue his claims against the defendant, they must be set forth in the amended

5  complaint.

6    By signing an amended complaint, plaintiff certifies he has made reasonable inquiry and

7  has evidentiary support for his allegations, and for violation of this rule the court may impose

8  sanctions sufficient to deter repetition by plaintiff or others.  Fed. R. Civ. P. 11.

9                                          **CONCLUSION**

10    1.  Plaintiff's motion to proceed in forma pauperis (ECF No. 3) is granted.

11    2.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff

12        is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. §

13        1915(b)(1).  All fees shall be collected and paid in accordance with this court's order

14        to the Director of the California Department of Corrections and Rehabilitation filed

15        concurrently herewith.

16    3.  Plaintiff's complaint (ECF No. 1) is dismissed with leave to amend.

17    4.  Plaintiff is granted thirty days from the date of service of this order to file an amended

18        complaint that complies with the requirements of the Civil Rights Act, the Federal

19        Rules of Civil Procedure, and the Local Rules of Practice.  The amended complaint

20        must bear the docket number assigned to this case and must be labeled "First

21        Amended Complaint."

22    5.  Failure to comply with this order will result in a recommendation that this action be

23        dismissed.

24  Dated:  March 28, 2023

25

26

27  DB:12
    DB/DB Prisoner Inbox/Civil Rights/S/gilb2160.scrn

28

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE